FILED
SUPERIOR COURT
OF GUAM

2023 JUL 11 PM 4:25

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| IN THE MATTER OF THE ESTATE | PROBATE CASE NO. PR0024-21 |
| OF | |
| TROY MCGHEE, | ORDER<br>RE: OBJECTION TO FIRST<br>AND FINAL ACCOUNT AND<br>REPORT OF ADMINISTRATION<br>AND PETITION FOR FINAL<br>DISTRIBUTION |
| Deceased. | |

## INTRODUCTION

This matter came before the Honorable Arthur A. Barcinas on Claimant Claudette McGhee's ("Claudette") Objection to the Amended First and Final Account and Report of Administration and Petition for Final Distribution ("Objection") of the estate of Troy McGhee, filed on November 15, 2022. The Amended First and Final Account ("Account") was filed by Troy's estate Administrator, Michael Gatewood ("Gatewood"). Claudette alleges eight causes of action in her contestation of the final account, on behalf of herself and her daughters, Elaine McGhee, Rozalyn Romeo, Rita McGhee, and Alita Bailey McGhee (collectively, "Claimants"), and claims that Gatewood failed to properly account for all assets in decedent's estate. Claimants now seek an order that: (1) the Account be denied approval as filed; (2) that Gatewood be ordered to review and revisit assets allegedly omitted in the Inventory document; (3) that Troy's

widow, Analie McGhee ("Analie") be made to pay back rent of $2,225 per month for a 16-month period from January 1, 2021 to April 30, 2022, and that Troy's daughters be given first choice of purchase upon sale of the rental property; (4) that Gatewood provide a comprehensive listing justifying the proposed set-aside of $37,500, including services anticipated to be rendered, the cost of such services, the individuals or entities anticipated to perform such services, and the creditors or agencies to whom such services will be required; (5) that Gatewood be authorized and ordered to pay all claims requested by Claimants, including $32,000 in interest to Claudette, $72,000 in interest to Troy and Claudette's daughters, and compensation to Claudette for her duties performed as former co-administrator of the estate; (6) that Gatewood be ordered to sell Troy's separate property vehicle to the daughters, and to pay Analie and Troy's son one third and one fifth of the proceeds, respectively; (7) that Gatewood be ordered to revisit Troy's bank deposits for inclusion of both separate and community property on the Inventory and Appraisement Listing; and (8) that Analie be ordered to produce all bank accounts held as community property and separate property and any other assets acquired during the marriage.

## BACKGROUND

Decedent Troy McGhee died on October 26, 2020, and was a resident of Guam at the time of his death. Acct., at 1. Upon his death, he left an estate in Guam subject to administration. *Id.* His surviving spouse Analie McGhee and ex-wife Claudette McGhee were former Co-Administratrices of the estate. Gatewood later qualified as Administrator of the estate and, on February 8, 2022, Letters of Administration were issued to Gatewood upon his petition to open the estate. Acct., at 2. Gatewood alleges that, to the best of his knowledge, information, and belief, Troy died intestate. *Id.* An inventory of the estate was returned and filed with the Superior Court of Guam on August 22, 2022, showing the value of the estate to be $259,734.33,

"and contains all the assets of decedent's estate that come to petitioner['s] knowledge or into his possession." *Id.* On September 16, 2022, Gatewood filed the amended Account, indicating only two pieces of separate property in the estate: a 2012 Ford Escape, valued at $5,042, and the proceeds from the sale of Unit 206 of Alupang Cove Condominium, valued at $254,692.33. Community property assets were omitted from the Account.

### A. Claims in the Amended Account

In the Account, Gatewood noted five extant claims against the estate at the time of filing. The first was a timely claim by Claudette, based upon a judgment she paid in a collection matter on March 14, 1986. Acct., at 3; Obj., at 3. Gatewood recommends that only the principal amount be repaid, and that the interest on the judgment be disregarded. *Id.* Claudette objected, alleging that a judgment creditor with a judgment against a decedent in the decedent's lifetime may redeem any real property of the decedent from any sale or foreclosure in the like manner and with like effects as if the judgment debtor were still living. Obj., at 3.

The second was a timely claim by Troy's daughters, based on the $8,000 principal of a promissory note issued in April 1984, which had accrued, by the daughters' estimation, approximately $72,000 in unpaid interest, despite Troy paying down approximately $12,000 of the debt. Acct., at 3; Obj., at 5. Gatewood recommends this claim be denied, alleging the claim was never reduced to judgment and would be barred by the statute of limitations. Acct., at 3. Troy's daughters object, stating that they submitted a timely claim "within the six-year limitation time period." Obj., at 4.

The third was a claim of HOA assessments and special assessment fees on the rental unit, as well as a credit card balance. Gatewood alleges that because Analie paid these fees out of the community funds in order to maintain upkeep of Troy's separate rental unit, the fees should be

balanced against any potential rent Analie might owe for staying in the unit. Acct., at 3. Troy's daughters object, stating that crediting Analie the cost of the fees without granting them rent income is inequitable.

The fourth is a claim by Claudette that "community property bank accounts should be part of the estate." *Id.*, at 4. Gatewood maintains that community property passed to Analie upon death and that Analie has no obligation to reimburse the estate for funds removed from community accounts. *Id.* Claudette stated that a surviving spouse is liable for a deceased spouse's debts chargeable against the community property. Obj., at 6.

The fifth claim stated by Gatewood is a fee of approximately $1,000 for accounting services to calculate the estate tax return on the sale of the rental unit, as well as an estimated $23,000 to be withheld from the sales proceeds to pay said taxes. Acct., at 4.

B. **Claimants' Causes of Action**

Claimants' First, Second, Third, and Fourth causes of action mirror the first four claims presented by Gatewood. Obj., at 3-6. In their Fifth Cause of Action, Claimants also protest Gatewood recommending transfer title of Troy's vehicle to Analie, as Claimants allege that Analie used the vehicle from November 2020 to April 2022 without paying any amount to the Claimants, who claim they have "controlling interest" of the vehicle. *Id.*, at 7. Claimants request that the Court instead transfer title to Troy's daughters for the purchase price of $5,042, and that Analie be paid "[one-third] percent of $5,042.00" and Troy's son be paid "[one-fifth] percent of $5,042.00" *Id.*

In their Sixth Cause of Action, Claimants protest Gatewood's payment of Attorney Terrence Brooks, alleging that Brooks was Analie's private attorney and worked only for her interest "and not for the benefit of the beneficiaries." *Id.* at 8. Claimants now ask for an order

requiring Gatewood to provide the duties that Brooks performed for the beneficiaries in his role as Attorney for the estate. *Id.* Claimants also object to Gatewood paying Analie $2,000 to reimburse "the retainer cost to her attorney and Administrator fees for her services," and ask that Gatewood "submit the services performed by [Analie]," presumably in her former role as Co-Administratrix. *Id.*

In their Seventh Cause of Action, Claudette alleges that Gatewood "overlooked or neglected to recommend that Claudette McGhee be compensated for the services performed during her tenure as court appointed Co-Administrat[rix]" from May 4, 2021 to February, 2022. *Id.* at 9. She requests that the Court order Gatewood to compensate her, pursuant to 15 GCA 2809, Allowance on Commissions of Personal Representative. *Id.*

In their Eighth Cause of Action, Claimants allege that Gatewood failed to provide a complete inventory listing and financial report. *Id.*, at 10. Claimants ask the Court to issue an order requiring Gatewood to submit another financial report including the total amount received from the rental unit, receipts of debts paid, and a proposal for anticipated services to be rendered with the $37,000 withheld from the estate. *Id.* Claimants further ask the Court to order Analie to provide an accounting of all community property. *Id.* Claimants allege that Gatewood failed to perform his duty without prejudice by failing to list said community property in the inventory. *Id.*

## DISCUSSION

Upon a person's death, the title to such person's property, real and personal, passes immediately to the person or persons to whom it is devised or bequeathed by such person's last will, or, in the absence of such disposition, to the person or persons who succeed to such person's estate as provided in the Guam statutes of succession. 15 G.C.A. § 1401(a).

Notwithstanding the foregoing, all of such person's property shall be subject to the possession of such person's personal representative and to the control of the Superior Court of Guam for the purpose of administration, sale, or other disposition under the statutes of estate administration, and shall be chargeable with the expenses of administering such person's estate, and the payment of such person's debts and the allowance to such person's family. *Id.* § 1401(b).

A. **First Cause of Action – Unpaid Accrued interest on the 1986 Judgment**

Claudette alleges that, on March 14, 1986, she paid off a debt for attorney fees owed by Troy. *Id.,* at 3. Claudette claims the debt was in the amount of $6,493.06, to be repaid at the rate of 6% per annum. *Id.* Gatewood stated that she also claimed interest from January 2, 1986, and the principal amount of the judgment is $6,658.08. Acct., at 3. Gatewood also stated that the judgment establishing the debt is now stale and was never renewed, but is willing to award Claudette the original amount of $6,658.08. *Id.*

Claudette maintains that, under 15 G.C.A. § 2559, a judgment creditor having a judgment which was rendered against the decedent in the decedent's lifetime "may redeem any real property of the decedent from any sale or foreclosure in the like manner and with like effects as if the judgment debtor was still living."

However, even if Troy were still living, there is no guarantee that Claudette would be able to enforce the judgment. The process to enforce a judgment of the payment of money is generally by a writ of execution. Guam R. Civ. P. 69. There is a five-year time limit on having a writ of execution issued for enforcement. 7 G.C.A. § 23101. According to the Supreme Court of Guam, that five-year enforcement statute "is designed to end judgment enforcement efforts by neglectful parties." *Harper v. Harper*, 2014 Guam 9 ¶¶ 26, 28. Furthermore, there is a five-year time limit overall on any action based on a judgment of any court of the United States. 7 G.C.A.

§ 11302. Claudette did not revive the claim to account for any unpaid accrued interest, nor did she attempt to have the judgment enforced within the five year period.

In *GEDA v Ulloa,* the Ninth Circuit held that 7 G.C.A. § 23101 – then Guam C.C.P. § 685 – is not an absolute statute of limitations, but merely provides a limited time within which the judgment creditor may obtain the writ of execution as a matter of right. Upon the expiration of the five-year period, "in which execution is available as a matter of right, the judgment has not lapsed or expired because enforcement of section [23101] is still available by leave of court, by motion, or by a judgment in the original proceeding based upon supplemental pleadings." 7 G.C.A. § 23106 similarly states that a judgment may be enforced or carried into execution after the time lapse of six years from the date of e entry, by leave of Court, upon motion or by judgment for that purpose.

However, as the Supreme Court of Guam noted, the five year limitation exists to prevent parties from profiting from their own neglect. If Claudette did not see fit to enforce or revive the judgment within the five year period, then the Court does not see fit to award her for her lack of diligence in this matter. The Administrator has awarded her the original amount of her debt sans interest, and the Court finds this equitable.

B. **Second Cause of Action – The Promissory Note Payment**

Troy's daughters object to Gatewood's recommendation that their claim to payment for the promissory note be dismissed. Obj., at 3. They state that the $12,500 received in payment of the original $8,000 debt is not sufficient to pay off the principal. *Id.* They state that Troy "made at will payments, in amounts he could afford to pay over the term of the loan not in compliance with the monthly rate of $125.00 the contractual terms. Each year the unpaid annual interest increased the unpaid Principal." *Id.*

Gatewood states that the claim is barred by the statute of limitations, to which Claimants reply that it is not barred because they "submitted a timely claim within the six-year limitation time period." *Id.*, at 4. However, Claimants do not state what statute this six-year period comes from. If it refers to the six-year time lapse in 7 G.C.A § 23106, that limitation does not apply here because that statute is specifically predicated on the existence of a judgment: "Enforcement of Judgment after Six Years." Furthermore, Claimants again base the timeliness of their claim on 15 G.C.A. § 2559, alleging that any judgment creditor having a judgment against the decedent in the decedent's lifetime may collect. However, even in the broadest interpretation of that statute, it still requires the creditor to have a judgment. Gatewood explicitly says the debt was never reduced to judgment, and no exhibits presented by Claimants show otherwise.

Failure to pay off the principal balance of the debt could be construed as a breach of contract on Troy's part, and Claimants do state that Troy was not in compliance with "the contractual terms," but Claimants have not explicitly raised a breach of contract theory in their objection. Further, any action based upon a contract, obligation, or liability founded upon an instrument in writing, such as a promissory note, has a four-year statute of limitations. 7 GCA § 11303(a).

1. **The Statute of Limitations Has Already Passed.**

The statute of limitations begins to run on the date the action accrues, which is generally the date of the breach in an action for breach of contract. *Dewitt v Teleguam Holdings, LLC*, 2014 WL 1389326, at *3 (D. Guam); *Pacific Rock Corp. v. Dept. of Ed.*, 2001 Guam 21 ¶ 49 ("A cause of action of whatever nature can accrue only at the time that a suit may be maintained thereon, and from that date forward the applicable statute of limitations begins to run."). In this instance, the statute of limitations would run from the first alleged breach. According to

Claimants, Troy made at-will payments, "in amounts he could afford to pay over the term of the loan *not in compliance* with the monthly rate of $125.00 the contractual terms. *Each year* the unpaid annual interest increased the unpaid Principal." Objection, at 2 (emphasis added). Based on the facts presented by Claimants, Troy breached the terms of the Promissory Note with regularity by underpaying every year, and Claimants were aware of this. Gatewood states that the initial amount was borrowed in April 1984, indicating that the breach began, at the latest, before April 1985, far more than four years before the claim was filed, or whatever six-year period that Claimants claim they filed within. Therefore, the statute of limitations for this cause of action is long passed.

## C. Third Cause of Action – Failure or Neglect to Award All Heirs an Entitled Rental Percentage of Decedent's Separate Property

Claimants object to Gatewood's recommendation to credit the fees and debts paid by Analie as sufficient compensation paid in lieu of rent. The Court disagrees on the grounds that the payment of the HOA fees and assessment fee represent a gain to the Claimants, with the exception of the credit card and loan debt, as Gatewood does not specify how the payment of the credit card and loan debt benefits Claimants or the estate.

Regardless of whether Claimants received rent from Analie during her stay in the rental unit, the HOA fees and special assessment would still have to be paid as upkeep for the unit to prevent liens and potential foreclosure, and therefore payment of the HOA fees and special assessment represent a gain to the Claimants. Therefore, the Court finds that Claimants are only entitled to the amount of rent due during Analie's stay, less the cost of the HOA fees, the special assessment fee, and her share of the monthly rental income. Gatewood has not explicitly demonstrated how the outstanding credit card balance is connected to the upkeep of the unit or

the separate property included in the estate, and therefore the Court holds that it will not be considered when calculating the amount of rent owed until such time as Gatewood can demonstrate how the payment of the debt represents a gain to the estate or the Claimants.

D. **Fourth Cause of Action – Community Property and Bank Accounts**

Claimants maintain that Analie is responsible for Troy's debts because a surviving spouse bears personal liability for a deceased spouse's debts chargeable against community property. Obj., at 6 (citing 15 G.C.A. § 1009). The Court finds that Claimants are correct in stating that Analie would bear liability for Troy's debts chargeable against the community property. However, this is a moot point as Claimants' first and second debts have passed the statute of limitations, and any debt in the third cause of action is derived from Analie herself, not inherited from Troy.

E. **Fifth Cause of Action – Awarding the Vehicle**

Claimants object to Gatewood's recommendation to transfer title of Troy's vehicle to Analie with the value of Claimants' shares being paid out of Analie's share of the estate cash. Obj., at 7. Claimants argue that Analie owes them a rental or leasing fee for a period of approximately 18 months during which Analie and her son used the vehicle. *Id.* Claimants also argue that Gatewood's recommendation to transfer title to Analie is an "unjust entitlement," because Gatewood made the recommendation "without including the entitled Heirs to participate in the negotiated conversation with Analie McGhee." *Id.* Claimants further argue that, in lieu of the alleged fee owed, the Court should order that the vehicle be sold to Claimants for the estimated value of $5,042.00, with Analie being paid from the proceeds "at 1/3rd percent of $5,042.00 and the son will receive 1/5th percent of $5,042.00." *Id.* Claimants allege that they

have a superior claim to the vehicle because their combined shares of the vehicle constitute a "controlling interest." *Id.*

Notably, Claimants do not cite any statutes to back their claim, because there is no Guam statute which dictates that one beneficiary owes another beneficiary for use of property in which they have a shared interest. In succession of separate property, the law only states that if a decedent leaves a surviving spouse and more than one living child, "the decedent's separate estate goes one third (1/3) to the decedent's surviving spouse and the remainder in equal shares to the decedent's children and to the lawful issue of any deceased child...." 15 G.C.A. § 903(b)(1). There is nothing in the statutes dictating exclusivity of use. Similarly, there is no statute which mentions "controlling interest" of inherited property, as an estate is not a corporation in which a group of lesser shareholders may join forces to overrule a larger shareholder.

The Court finds that Gatewood's proposal is an equitable solution, and that, as Administrator of the estate, he is within his rights to dispose of the vehicle in the manner that he sees fit. "When two or more heirs ... are entitled to the distribution of undivided interests in any real or personal property and they have not agreed among themselves, before distribution, to a partition, allotment, or division thereof, any one or more of them, or the personal representative, at the request of any one or more of them, may petition the Superior Court to make such partition, allotment, or division of the property as will be equitable..." 15 G.C.A. § 2911. However, "personal property of an estate which will depreciate in value if not disposed of promptly or which will incur loss or expense by being kept, [such as automobiles] ... may be sold [by the personal representative] without notice, and title shall pass without confirmation of such sale by the Superior Court." 15 G.C.A. § 2331(a)-(b). The transfer of title recommended by

Gatewood would mean a buyout of Claimants' collective interest in the vehicle, which the Court deems to constitute a sale for the purposes of the statute, and the exchange of funds for Claimants' interest in the vehicle is deemed to be equitable.

F. Sixth Cause of Action – Attorney's Fees

Claimants object to the payment of Attorney Terrence Brooks from the estate, alleging that Brooks is being "paid for services performed as Analie McGhee's private attorney in the capacity of Attorney for the Estate." Obj., at 8. Claimants further state that Brooks "performed his services that prevented a conflict of interest," but cite ABA Rule 1.7(b) to state that Brooks is "required to obtain consent and that each affected client or former client has given informed consent to the representation confirmed in writing. There was no consent given orally or in writing." *Id.* Claimants then request that the Court order Gatewood to provide a list of duties that Brooks performed for the Claimants in his role as attorney for the estate. *Id.* Claimants state that they object to Gatewood recommending that $2,000 be paid to Analie "to reimburse the retainer cost to her attorney and Administrator fees for her services on the basis that the retainer cost should be paid from her private funds." *Id.* Claimants allege that Brooks only protected Analie's interests and did not act "for the benefit of the beneficiaries." *Id.* Finally, Claimants state that Gatewood should be required to "submit the services performed by Analie." *Id.*

Claimants' language is conflicting and unclear. Brooks is serving as the statutory attorney for the estate administrator, and by extension the estate, and is not obligated to any of the beneficiaries in particular. Gatewood reimbursed Analie the cost retainer because Brooks served as her attorney in her capacity as co-administratrix, not as a beneficiary. As such, Brooks' loyalty is to the administrator of the estate, whoever it may be, not to Analie's personal interests. Therefore, there is no conflict of interest and Brooks is entitled to attorney's fees. The attorney

for the personal representative shall be allowed out of the estate, as fees for conducting the ordinary probate proceedings, the same amount as the commission allowed to the personal representative. 15 G.C.A. § 2811. Furthermore, because Brooks' loyalty is not to the beneficiaries, he is not required to provide a list of services performed for the Claimants because they are not his clients. The only accounting the Court may compel in this instance is "a verified account showing the amount of money received and expended by the personal representative, the claims filed or presented against the estate, giving the name of each claimant, the nature of the claim, when it became due or will become due, whether it was allowed or rejected by the personal representative, or not yet acted upon, and all other matters necessary to show the condition of the estate." 15 G.C.A. § 2703. The Court finds that Gatewood has sufficiently met these criteria in the Account. As to the alleged fees for Analie's services as Co-Administratrix, Gatewood listed no such fees in the Account. The Administrator's fees which he includes in the Closing Expenses section of the Account refer to his own fees. Acct., at 5.

G. Seventh Cause of Action – Failure, Omission, or Neglect to Recommend Compensation for Claudette as Former Co-Administratrix

Claudette alleges that Gatewood "overlooked or neglected to recommend that [Claudette] be compensated for the services performed during her tenure as court appointed Co-Administrat[rix]." Obj., at 9. Claudette cites 15 G.C.A. § 2809, stating that "[a]ny personal representative, at any time after six (6) months from the issuance of ... letters of administration ... may apply to the Superior Court for an allowance upon his commissions." *Id.* However, this is predicated upon the assumption that Claudette is entitled to commissions. Claudette alleges that during her tenure as Co-Administratrix, she performed the following actions: (1) submitted Clerk's cover letter, Petition for letters, and request for appointment; (2) took an oath of

administration; (3) performed "duties of the Personal Representative"; (4) emailed notices to creditors; (5) attended Zoom court hearings and mediation meetings; (6) prepared and submitted letters to request bank deposits; (7) prepared and submitted a partial Inventory and Appraisement document; and (8) submitted a document to the Court to justify her competence to perform the duties of Co-Administratrix. *Id.* The Court does not find these duties sufficient to warrant full, if any, compensation as an Administrator of the estate.

Pursuant to 15 G.C.A. §§ 2801 and 2803(a), the personal representative shall be allowed all necessary expenses in the care, management, and settlement of the estate, and for those services, an administrator shall receive commissions upon the amount of the estate accounted for by them. Gatewood has notably done the lion's share of the administrative work in this matter, and apart from the partial Inventory and Appraisement document, there is little to show Claudette's accounting for the estate.

Claudette maintains that failure to recommend compensation for her is a violation of her equal rights under the Fourteenth Amendment. This is a fruitless argument for two reasons. First, Analie, the other Co-Administratrix, was similarly not recommended to receive compensation. Further, § 2803(a) dictates that if there are two or more personal representatives, the compensation shall be apportioned among them by the Superior Court according to the services actually rendered by each. The Court finds that Gatewood provided most, if not all, of the services in managing and settling Troy's estate, and that the work done by Claudette to benefit the estate is negligible.

H. Eighth Cause of Action – Failure or Neglect to Provide a Complete Inventory Listing and Financial Report

Claimants allege that Gatewood neglected to perform his administrative duties without prejudice, and failed to provide a complete inventory and appraisement listing as well as a "financial report of debts paid, to whom paid, date of payment, amount paid and a prepared list of the anticipated sources to justify the request to withhold Estate money." Obj., at 10. Based on this allegation, Claimants request that the Court order Gatewood to prepare and submit a complete financial report to include the total payment received from the sale of the rental unit, receipts of debts paid, and a proposal for anticipated services to be rendered to justify the purpose of withholding moneys after the close of probate. *Id.*

Claimants also request that the Court order Analie to produce all bank accounts held as community property and any other assets acquired during marriage, as well as the bank documents invoicing the payments of $44,739.71 from the community property to pay off outstanding credit cards and loan accounts. Claimants cite to 15 G.C.A. § 2603, claiming, in relevant part, that it reads, "Inventory and Appraisement Listing is submitted to the court to include all assets, liabilities, separate and community property." This language is not part of the statute, and the statute does not mention community property at all. Further, while a surviving spouse may be personally liable for their deceased spouse's debts, as mentioned above, Analie is not required to disclose any records of the community property because the community property is not subject to administration unless Analie or Gatewood elect to do so within four months of the issuance of the letters of administration. 15 G.C.A. § 1005(a)-(b). When a married person dies intestate, as Troy did, all of his interest in the community property passes immediately to the surviving spouse upon death, and is effectively no longer part of the estate. *Id.*; 15 G.C.A. § 1001.

Returning to 15 G.C.A. § 2603, the statute explicitly states that the personal representative must file with the Court "an inventory and appraisement of the *estate* of the decedent" and must include "the homestead, if any, and all *the estate of the decedent, real and personal....*" (emphasis added). As Troy's interest in the community property transferred to Analie upon death, community property need not be included in the inventory. There is no mention of community property in this statute, and the only reference to community property in the entire Inventory and Appraisement chapter reads that "[t]he inventory referred to in Section 2603 of this Title must show ... what portion of the property is community property, and what portion is separate property of the decedent." 15 G.C.A. § 2605. The Court interprets the community property assessed under § 2605 to refer only to community property which was electively submitted for administration under 15 G.C.A. § 1005, and not all community property. The Court further finds that, in itemizing Troy's separate property, Gatewood has sufficiently demarcated said portions in accordance with § 2605.

In regards to Gatewood's list of expenses, again, pursuant to 15 G.C.A. §§ 2801, the personal representative shall be allowed all necessary expenses in the care, management, and settlement of the estate. None of the expenses listed in the Account are atypical of this type of probate matter, and the Court does not see fit to expend further time and resources requesting another account. This claim is also denied.

## CONCLUSION

The Court hereby **DENIES** all of Claimants' objections, with the exception of the Third Cause of Action regarding rent compensation. The Court **ORDERS** that Analie pay the amount, if any, of back rent for the sixteen months spent in the rental unit, after deducting the value of the monthly HOA fees, the special assessment fee, and her 1/3 share of the rental income. Should

Gatewood be able to explain the benefit of the payment of the credit card debt to the estate or the rental unit, the Court will consider further lowering the amount owed, if any. The Court further **ORDERS** that Attorney Brooks prepare a final decree consistent with this Decision and Order, to be submitted for the Court's review within ten (10) days of the date of the Decision and Order.

SO ORDERED: ___JUL 1 1 2023___

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

**SERVICE VIA EMAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:

Brooks Concepcion Law
Michael Gatewood
Claudette McGhee

Date: 7/11/23 Time: 4:36 pm

**AMY COLLEEN K. ARCEO**
Deputy Clerk, Superior Court of Guam